IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TRACY L. GRIER, | ) | CASE NO. 1:12-CV-2118 |
| | ) | |
| Plaintiff, | ) | JUDGE SARA LIOI |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| | ) | KENNETH S. McHARGH |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | REPORT & RECOMMENDATION |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

This case is before the Magistrate Judge pursuant to local rule. The issue before the undersigned is whether the final decision of the Commissioner of Social Security (the "Commissioner") denying Plaintiff Tracy Grier's application for Supplemental Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.*, is supported by substantial evidence and, therefore, conclusive.

For the reasons set forth below, the Court recommends that the decision of the Commissioner be **AFFIRMED**.

I. PROCEDURAL HISTORY

On February 11, 2008, Plaintiff Tracy Grier ("Plaintiff" or "Grier") applied for Supplemental Security Income benefits. (Tr. 55, 118-21). Plaintiff originally alleged she became disabled on January 1, 2004, due to suffering from a ruptured pancreas, shortness of breath, and problems with her hips, knee and neck. (Tr. 136). However, she later amended her onset date to February 11, 2008, the date she applied for benefits. (Tr. 26). Grier's application was denied initially and upon reconsideration. (Tr. 57-59, 63-65). On December 11, 2008,

Plaintiff filed a written request for a hearing before an administrative law judge ("ALJ").  (Tr. 66).

On August 5, 2010, Administrative Law Judge Penny Loucas convened a hearing via video to hear Grier's case.  (Tr. 22-54).  The ALJ presided over the hearing from Springfield, Massachusetts.  (Tr. 9).  Plaintiff, along with counsel, appeared in Mansfield, Ohio.  (Tr. 9, 24).  Michael Dorval, a vocational expert, also appeared at the proceeding and testified.  (Tr. 45-53).

On September 10, 2010, the ALJ issued her decision applying the five-step sequential analysis[1] to determine whether Grier was disabled.  (Tr. 9-17).  Based on her review, the ALJ concluded Plaintiff was not disabled.  (*Id*.).  Following the issuance of this ruling, Plaintiff sought review of the ALJ's decision from the Appeals Council.  (Tr. 113-16).  However, the

---

[1]  The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability."  *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The Sixth Circuit has summarized the five steps as follows:

(1) If a claimant is doing substantial gainful activity – i.e., working for profit – she is not disabled.

(2) If a claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled.

(3) If a claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

(4) If a claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.

(5) Even if a claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

council denied Grier's request, thus rendering the ALJ's decision the final decision of the Commissioner. (Tr. 1-5). Plaintiff now seeks judicial review of the Commissioner's final decision. Review is proper pursuant to 42 U.S.C. §§ 405(g) and 1383(c).

## II. PERSONAL BACKGROUND INFORMATION

Plaintiff was born on February 27, 1963, and was 47 years old on the date of her hearing before the ALJ. (Tr. 216). Accordingly, at all relevant times, Plaintiff has been considered a "younger person" for Social Security purposes. 20 C.F.R. § 416.963(c). Plaintiff's highest level of education was the eighth grade. (Tr. 216). She has past experience working as a toy assembler and kitchen helper. (Tr. 47-48).

## III. MEDICAL EVIDENCE[2]

Plaintiff suffers from an array of medical problems, some of which predate her alleged disability onset date. In 1991, Grier suffered a gunshot wound to her left hand injuring two fingers. (Tr. 226). Then, in 1992, window glass fell on her left forearm requiring surgery. (*Id*.). Grier indicated that she has continued to experience pain in her left hand and forearm due to these injuries. (*Id*.).

On August 2, 2006, Plaintiff underwent a consultative examination with Dr. Mei-Chiew Lai, a physical and rehabilitation specialist. (Tr. 226-30). Grier presented with complaints of lower back pain which radiated down to her groin, hips and legs at times. (Tr. 226-27). She also reported that she experienced numbness in her upper and lower extremities and had headaches daily. (Tr. 227). Upon examining Plaintiff, Dr. Lai diagnosed her with chronic low back pain,

---

[2] The following is merely a summary of the medical evidence relevant to the undersigned's decision. It is not intended to fully reflect all of the evidence the undersigned took into consideration in reaching its ruling.

chronic left arm pain, migraine headaches, depression, mood changes, a history of alcoholism and flexion contracture of her PIP joints in two fingers in her left hand. (Tr. 229). The doctor recommended that Plaintiff undergo testing to determine the cause of the pain Plaintiff experienced in her lower back, arms and legs. (*Id.*).

On August 21, 2006, Dr. Lai conducted electromyogram ("EMG") and nerve conduction velocity ("NCV") testing on Grier. (Tr. 231). The tests revealed evidence of "mid to low left cervical nerve root irritation" and "bilateral lower lumbar, upper sacral nerve root irritation". (*Id.*). But, it did not show that Grier suffered any peripheral neuropathy. (*Id.*). Dr. Lai also performed an x-ray of Grier's cervical spine. (*Id.*). This test showed degenerative changes at C3 through C7, degenerative disc disease at L5-S1 and bilateral facet arthropathy at L5-S1. (*Id.*). Despite these findings, Dr. Lai noted that Plaintiff did not require surgery at the time, and that such a procedure would not reverse the arthritic changes which had already occurred. (*Id.*). Instead, the doctor indicated that Plaintiff could minimize her pain by not "over-doing" it, practicing proper body mechanics, participating in physical therapy and resting. (*Id.*).

During the relevant period under review, Plaintiff was seen by Dr. Michael Viau on March 19, 2008. (Tr. 325). Grier presented to Dr. Viau with complaints of chronic hip, neck and back pain. (*Id.*). Plaintiff informed Dr. Viau that she had not sought treatment for these problems for several years because she did not have medical insurance. (*Id.*). After reviewing x-rays, Dr. Viau opined that Grier suffered from degenerative changes in her lower lumbar spine with mild degenerative scoliosis, severe degenerative changes in her cervical spine and mild degenerative joint disease in both hips. (*Id.*). Based on these findings, Dr. Viau diagnosed Plaintiff with arthritis in her hips, spondylosis in her lower spine, scoliosis and degenerative disc disease in her cervical spine. (Tr. 328). The doctor again recommended Grier to participate in

physical therapy. (*Id*.). Lastly, he concluded that Plaintiff was unable to work "[d]ue to chronic pain". (Tr. 329).

Finally, on June 16, 2008, Plaintiff was examined by consultative examiner, Dr. Donald Beddard. (Tr. 331-37). Dr. Beddard conducted straight leg raising tests on Plaintiff, in which Plaintiff tested negative. (Tr. 333). The doctor did not observe Plaintiff to experience muscle spasms or muscle atrophy. (Tr. 335). However, Plaintiff had difficulty rising from a supine position and was unable to walk on her heels and toes. (Tr. 333). Dr. Beddard also noted that Plaintiff had decreased range of motion in her shoulders and lumbosacral spine. (*Id*.). The physician diagnosed Grier with cervical spine and low back syndrome. (*Id*.). Additionally, he opined Plaintiff "would have difficulty lifting and carrying and some problem with handling with the left hand as this hand had a gunshot wound." (*Id*.). Dr. Beddard further commented that Plaintiff had problems with picking up coins, keys, buttons and using a zipper. (Tr. 335).

## IV.  ALJ's DECISION

The ALJ made the following relevant findings of fact and conclusions of law:

1. The claimant has not engaged in substantial gainful activity since February 11, 2008, the application date.

2. The claimant has the following severe impairments: cervical degenerative disc disease, lumbago, chronic bronchitis, injured left arm due to gunshot and dysthymic disorder.

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except she can stand and/or walk, sit [sic] for a total of 6 hours. Her ability to push and/or pull is unlimited. She can occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl, but should never climb ladders, ropes and scaffolds. She can

5

>
> occasionally lift overhead with the non-dominant left shoulder. All other uses of the hands and arms are unlimited. She must avoid respiratory irritants. From a mental health perspective, she is limited to constant simple and detailed instructions. She can concentrate for 2 hours at a time. There are no limitations on social interactions. Finally, she is limited to routine changes in the workplace.
>
> 5. The claimant is capable of performing past relevant work as a toy assembler. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.
>
> 6. The claimant has not been under a disability, as defined in the Social Security Act, since February 11, 2008, the date the application was filed.

(Tr. 9-17) (internal citations omitted).

## V. DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when she establishes disability within the meaning of the Social Security Act. *See* 42 U.S.C. §§ 423, 1381. A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." *See* 20 C.F.R. §§ 404.1505, 416.905.

## VI. STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards. *See Cunningham v. Apfel*, 12 F. App'x 361, 362 (6th Cir. 2001)*; Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)*; Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence. *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535

(6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Id.* The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). This Court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Garner*, 745 F.2d at 387. However, it may examine all the evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

## VII. ANALYSIS

Plaintiff challenges the ALJ's decision on two grounds: (1) whether the ALJ erred in finding that Plaintiff did not meet all of the criteria of Listing 1.04; and (2) whether substantial evidence supports the ALJ's finding that Dr. Viau's opinion of disability was not entitled to controlling weight.

### A. Listing 1.04

The third step of the disability evaluation process asks the ALJ to compare the claimant's impairments with an enumerated list of medical conditions found in the Listing of Impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. § 416.920(a)(4)(iii); *Turner v. Comm'r of Soc. Sec.*, 381 F. App'x 488, 491 (6th Cir. 2010). The Listing of Impairments recites a number of ailments which the Social Security Administration has deemed

"severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 416.925(a). Each listing describes "the objective medical and other findings needed to satisfy the criteria of that listing." 20 C.F.R. §416.925(c)(3).

A claimant will be deemed disabled if his impairments meet or equal one of these listings. In order to "meet" a listing, the claimant must satisfy all of the listing's requirements. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 653 (6th Cir. 2009). However, if the claimant does not meet all of the listing's requirements, he may still be deemed disabled if his impairments "medically equal" the listing in question. 20 C.F.R. § 416.926(b)(3). To do so, the claimant must show that his impairments are "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 416.926(a).

In this case, the claimant must prove that she has impairments that meet or equal a disorder of the spine, namely Listing 1.04 which covers:

> Disorders of the spine (e.g. herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equine) or the spinal cord.
> With:
>
> A.   Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
>
> or
>
> B.   Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;

>    or
>
>    C.	Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Pt. 404, Sbpt. P, App. 1, § 1.04.

To support her claim that the ALJ failed to properly consider the issue, Grier refers to a single sentence from the ALJ's opinion: "[t]he claimant does not have sufficiently severe objective findings to be considered presumptively disabled at this step of the sequential evaluation." (Pl. Br. at 5, Tr. 13). However, the ALJ's ruling at this step also stated that "[n]o treating or examining physician ha[d] indicated findings that would satisfy the requirements of any listed impairment. Although the claimant has impairments which are considered severe, they are not attended, singly or in combination, with the specific clinical signs and diagnostic findings required to meet or equal the requirements set forth in the Listing of Impairments." (Tr. 13).

Ultimately, it is Plaintiff's burden to demonstrate that she meets all of the criteria of Listing 1.04. Beyond reciting results of an examination conducted two years before the relevant period in 2006, Plaintiff's brief makes no argument regarding the existence of objective medical findings that would meet or equal Listing 1.04 during the relevant period. Indeed, EMG and NCV testing conducted at that time showed no evidence of peripheral neuropathy. (Tr. 231, 233-35). During the relevant period in 2008, Dr. Beddard reported that Paintiff's deep tendon reflexes were normal, a straight leg raising test was negative, and manual muscle testing was essentially normal with no muscle spasm or atrophy. (Tr. 334). Dr. Beddard also reported that Plaintiff did not require the use of an aid to ambulate. (Tr. 333). Plaintiff did not point to any

evidence in the record demonstrating that her impairments medically met or equaled the listing at issue. Neither did Plaintiff directly argue that her impairments *actually* equaled listing level. As such, Plaintiff's challenge to the ALJ's listing determination is without merit.

### B. Treating Physician

Next, Plaintiff derides the ALJ's handling of the opinion of treating physician, Dr. Michael Viau. It is well-recognized that an ALJ must give special attention to the findings of the claimant's treating sources. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). This doctrine, often referred to as the "treating source rule" is a reflection of the Social Security Administration's awareness that physicians who have a long-standing treating relationship with an individual are best equipped to provide a complete picture of the individual's health and treatment history. *Id.*; 20 C.F.R. § 416.927(c)(2).[1] The treating source rule indicates that opinions from such physicians are entitled to controlling weight if the opinion is (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "not inconsistent with the other substantial evidence in the case record." *Wilson*, 378 F.3d at 544.

When a treating source's opinion is not entitled to controlling weight under this framework, the ALJ must determine how much weight to assign to the opinion by applying specific factors set forth in the governing regulations. 20 C.F.R. § 416.927(c)(1)-(6). These factors include: the length of the treatment relationship, the nature and extent of the treatment, how well the physician's opinions are supported by other medical evidence, the extent to which the physician's opinions are consistent with the record as a whole, whether the physician is an

---

[1] Effective March 26, 2012, Section 416.927 of the Code of Federal Regulations was amended. Paragraph (d) was redesignated as paragraph (c). See 77 F.R. 10651-01, 2011 WL 7404303.

expert in the particular field of practice for which he/she is treating the claimant, and any other factor which may support or contradict the opinion. *Id*. The regulations also require the ALJ to provide "good reasons" for the weight ultimately assigned to the treating source's opinions. *Id*. An ALJ's failure to adhere to this doctrine may necessitate remand. *Wilson*, 378 F.3d at 545.

However, an adjudicator's failure to adhere to the treating source rule will not always warrant remand. *Wilson*, 378 F.3d at 547. A violation of the rule may be deemed harmless where (1) the treating source's opinion is patently deficient; (2) the Commissioner makes findings consistent with the doctor's opinion; or (3) the ALJ satisfies the goal of the "good reasons" requirement despite failing to adhere to the letter of the regulation. *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010) (*quoting Wilson*, 378 F.3d at 547). "If the ALJ's opinion permits the claimant and a reviewing court a clear understanding of the reasons for the weight given a treating physician's opinion, strict compliance with the rule may sometimes be excused." *Id*.

Grier's argument that the ALJ should have given controlling weight to Dr. Viau's findings is not well-taken. Initially, beyond stating that "Dr. Viau is the only treating physician in this case", Plaintiff fails to point to any evidence in the record to suggest that Dr. Viau saw Plaintiff on more than one occasion or that he relied upon any contemporaneous test or examinations before concluding that Plaintiff was "unable to work". (Tr. 329). As the ALJ determined, such conclusions, even by a treating physician are not entitled to controlling weight as the issue of disability is a legal, not a medical issue, and therefore is reserved solely to the Commissioner. (Tr. 15-16); *See* 20 C.F.R. § 416.927(d)(1); *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003) (explaining that an opinion that a claimant is "disabled" is not a medical

opinion). Accordingly, opinions on the ultimate issue of disability, regardless of their source, are not entitled to any particular weight or deference. *See* 20 C.F.R § 416.927(d)(3).

The regulations further provide that the more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight will be given to the opinion. *Id*. at (c)(3). The ALJ appropriately observed that Dr. Viau did not support his opinion of disability with any medical findings, but merely listed Plaintiff's diagnoses and his conclusions of disability on a Basic Medical form for the Ohio Department of Job and Family Services. (Tr. 328-29). However, the relevant consideration in all disability cases is not a claimant's diagnosis, but the functional limitations resulting there from. *See Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988)* ("The mere diagnosis of arthritis, of course, says nothing about the severity of the condition.").

The ALJ explained that she carefully considered Dr. Viau's observations and findings regarding Plaintiff's functional limitations, but did not assign controlling weight to his opinion of disability because it was usupported by any clinical or objective finds and was inconsistent with Plaintiff's contemporaneous treatment notes. (Tr. 15-16). Given Plaintiff's failure to point to specific support for her position and the adequacy of ALJ's review of the evidence, the undersigned rejects Plaintiff's argument that this was a vague statement precluding meaningful judicial review. *See Bledsoe v. Barnhart*, 165 F. App'x 408, 412 (6th Cir. 2006) ("The ALJ reasoned that Dr. Lin's conclusions are 'not well supported by the overall evidence of record and are inconsistent with other medical evidence of record.' This is a specific reason for not affording controlling weight to Dr. Lin.").

While it is true that the ALJ did not specifically indicate the amount of weight he assigned to Dr. Viau's opinion, the ALJ clearly considered it and provided ample justification for discrediting the doctor's findings. In addition to noting that Dr. Viau's conclusions were not supported by any clinical or objective findings and were inconsistent with contemporaneous treatment notes, the ALJ discussed the relevant medical evidence of record.

The ALJ identified medical and treating records that contradicted Dr. Viau's claim of complete disability including EMG and NCV studies in August of 2006 which revealed no evidence of peripheral neuropathy. (Tr. 231-35). Three months after Dr. Viau's March 2008 opinion, Dr. Beddard reported that Plaintiff did not require an assistive device to ambulate; had normal sensation in her lower extremities; her straight leg raising test was negative; and her deep tendon reflexes and manual testing were normal with no muscle spasm or atrophy. (Tr. 333). Dr. Beddard additionally reported that Plaintiff was able to use her hands for manipulation, pinching, and fine motor coordination; the range of motion of Plaintiff's cervical spine, hips, knees, and ankles was normal; and the range of motion of her shoulders was only very slightly reduced. (Tr. 334-37). Despite Plaintiff's musculoskeletal impairments, Dr. Gahman, who reviewed all of Plaintiff's medical records in August of 2008, opined that Plaintiff would be capable of performing a limited range of light work. (Tr. 369-71). Plaintiff fails to identify any medical evidence during the relevant period to contradict the ALJ's treatment of Dr. Viau.

Plaintiff also maintains that the ALJ's treatment of Dr. Viau's opinion was further undermined by the ALJ's inappropriate handling of Plaintiff's claims of experiencing "level 10" pain when examined by Dr. Viau and during her hearing before the ALJ. (Pl's Br. at 9). Although the undersigned acknowledges that observations of Plaintiff's demeanor during the hearing are relevant to an assessment of credibility, the ALJ's assertion that "at that level of pain,

[claimant] would not be coherent, would not be able to be attentive to questioning, and would be witing (sic) in pain", (Tr. 15), are conclusions which fall outside the ALJ's expertise. Nevertheless, the ALJ provides sufficient justification for her determination that "claimant [wa]s not fully credible and . . . magnifie[d] and exaggerate[d] her condition". (Tr. 14). For example, the ALJ highlighted that Plaintiff's denial of smoking due to her inability to afford cigarettes contradicted statements she made to medical professionals during the relevant period wherein she admitted to smoking half a pack of cigarettes each day. (*Id.*; Tr. 332, 379). The ALJ also noted that Plaintiff rarely reported back pain during routine visits to Richland County Health Clinic throughout 2009 and 2009, (Tr. 14, 463), that Plaintiff's back pain was treated conservatively with pain analgesics and physical therapy, and that in April of 2008, Plaintiff was discharged from physical therapy secondary to non-compliance. (Tr. 14-15, 448). As a result, even assuming that the ALJ's statements were inappropriate, substantial evidence supports her credibility decision. Ultimately, Plaintiff fails to identify any evidence sufficient to require the ALJ to accord any greater consideration to the opinions of Dr. Viau.

## VIII. DECISION

For the foregoing reasons, the Magistrate Judge finds the decision of the Commissioner finding that Plaintiff was not disabled is supported by substantial evidence. Accordingly, the Court recommends that the decision of the Commissioner be **AFFIRMED**.

s/ Kenneth S. McHargh  
Kenneth S. McHargh  
United States Magistrate Judge

Date: July 11, 2013.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of mailing of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *see also United States v. Walter*s, 638 F.2d 947 (6th Cir. 1981).